Overton J.
 

 delivered the following opinion of the court.
 

 The caveator claims under an occupancy, provided for by act of December 1807, c. 2. s. 36.
 

 The jury found that the caveator was seated on the land in dispute on the 12th of September 1807, and for a long line before. His entry was for three hundred acres, which was surveyed on the 22d July, 1808 ; on the 28th July 1808 he applied a warrant to his entry.
 

 The defendant claims under an entry, made by Shute, his locator, for six hundred and forty acres, on the 30th of Aug. 1807, which “ begins on the north bank of Duck river, at a sugar tree, due south of Motherall’s N. W. corner, thence
 
 *270
 
 west two hundred and twenty six poles, and down the meanders of Duck river from the beginning for compliment." On the 29th of April 1808, a survey for the defendant was returned into the surveyor’s office,
 
 for
 
 three hundred and fifty four acres, on the north side of Duck river. “ leaving as appeared from the certificate of survey, two hundred and eighty six acres to be yet satisfied, which could not be obtained on account of the India claim on the south side of Duck river.”
 

 The jury also fraud, that at the time Shute made the entry for Hughlet, Shute was interested in it; that the caveator was then seated on the land,
 
 claiming
 
 a right of occupancy which was known to Shute. The plaintiff applied to shute who was a surveyor, to survey his entry before Hughlet's which he refuted to do, though he had paid him his fees.
 

 The jury also found that the Defendant's entry called for land on the south side of Duck river ; that his survey is on the north tide of the river, and made agreeably to his entry ; if it had, it would not have interfered with the plain tiff's claim on the north side. This finding of the jury in relation to the construction of the entry was set aside by the circuit court, on the ground, as admitted in argument, that the jury acted beyond their province giving a construction ; it was their duty to find facts only.
 

 It was also st stated in the finding of the jury, that the surveyor of Hughlet’s entry had in his plat of survey, made an incorrect plat of the river—that Duck river at that place was the boundary between the Indians and white people; that to begin at a sugar tree due south from Motherell's North W.
 
 corner,
 
 and run west two hundred and twenty-six poles, then north for quantity, would include six hundred and forty acres, and also include the land in dispute.
 

 The defendant’s entry was made under the authority of the act of 1806, c. 1. It has been insisted in argument, that his entry is not agreeable to the 10th sec. of that act. It is in these words : “ the party shall direct the location thereof, so specially and precisely, beginning on one of the lines of the section, or some part of the existing claims within t
 
 he
 
 same, and therein expressing the numb
 
 er
 
 of perches the first line shall extend
 
 ;
 
 so that the surveyor may be enabled to lay the same down with precision, before the survey of the same is actually made, which the surveyor is hereby required
 
 to
 
 place in its proper place, meaning on the general
 
 *271
 
 plat, without delay, that the vacant residuum may appear within each section in his district.”
 

 To run west two hundred and twenty-six poles, and then north, disregarding the river, would of course include six hundred and forty acres, the full quantity called for in the defendant's entry; but it is the opinion of the court, that the defendant did not mean to include in his survey the land on the south side of Duck river—The presumption of law is conformable to the manner in which the survey has been made. The law never presumes a wrong or trespass. It is therefore fairly to be presumed that the west course called for by the defendant's entry, was not with a design to appropriate land on the south side of the river, but the west course was called for merely in compliance with the 10th section of the act of 1806
 
 c.
 
 1, recited above. But, were the entry construed as having an intuition to include two hundred and eighty six acres on the south side of the river, the result would he the same. It is however insisted on the part of the plaintiff, that the entry is vague and void. To run west two hundred and twenty six poles, thence back to the beginning, and down the river, as the entry plainly imports would not include any land, for the extreme western point of the west course is not on the river. After the application of a warrant to the plaintiff’s entry, (viz) on the 28th July 1808, his entry was complete in affording an equitable title, and consequently it the defendant’s entry be void for vagueness, the plaintiff must prevail, having a good entry, and there is no dispute respecting the plaintiff's survey.
 

 The court clearly discerns, that the entry is not so wholly uncertain as to be of no effect. The entry will admit of two constructions for its support, consistently with the principles of law. One by rejecting the west course altogether, there being no dispute about the place of beginning, and then it will read thus, “ beginning on the north bank of Duck river, a due south course from Motheral’s north west corner, thence down the meanders of Duck river for compliment.” The plain construction of this ent
 
 ry
 
 would be, that it was intended to appropriate land on the north side of Duck river for two reasons, one is, that lands for the south side could not agreeably to law be appropriated, and the other, that the entry begins on the north side, and no intention is shown by the entry to run on the south side; nor would it be any objection in the mouth of the plaintiff, that the whole six hundred and forty was not surveyed on the north side, because
 
 it
 
 would be a greater injury than it now is.
 

 
 *272
 
 The other construction is by adopting it as the meaning of the entry that part of the land was to be on the south side of Duck.
 

 To attain a view of this part of the subject, we must refer to the alteration produced in the act of 1806 c. 1, by the act of 1807, c. 2.
 

 The 39th, 40th, 41st, 42nd, 43rd, and 44th sections of the act of 1807 afford us information on the subject of entering and surveying. In a word, it may be said, that the North Carolina principles in force and use previous to the cession are by these sections restored. Agreeably to these principles the 43rd. section provides that, “ if upon survey it be found that there is not the quantity of vacant land called for in the entry, either on account of prior claims, natural boundaries, or the calls of the location, the part thus vacant shall be surveyed and the balance removed elsewhere.” The surveyor proceeded on this principle in leaving out the quantity called for on the south side of Duck, as by law he ought to have done, supposing it was the intention of the enterer of the run there.
 

 In other words, though an entry may call for appropriated lands, it is the duty of the surveyor not to run into lands previously appropriated agreeably to law. The lands on the south side
 
 of
 
 Duck river, were previously disposed of for the use of the Indians, and excluded by law from appropriation. The entry was made under the authority of the act of 1806, but surveyed by authority of the act of 1807.
 

 That part of the finding of the jury, relative to the construction of the defendant’s
 
 entry,
 
 was very properly rejected. At the time of the defendant’s entry, notice that the plaintiff was stated on the land could not affect him, as there was then no law giving a preference of appropriation in consequence of such occupancy ; consequently, both plaintiff and defendant stood on an equal footing. The first entry gave the right
 
 ;
 
 not was it in the power of the legislature afterwards to divest the interest communicated by the defendant's entry. But
 
 the
 
 legislature never designed to do so. It is provided that occupants shall have a preference. where they were seated on vacant and unappropriated land, on the 12th of September 1807
 
 ;
 
 now this land was not vacant and unappropriated on that day, because, the defendant had enterodation the 3d of Aug. preceding.
 

 The defendant has the better right, and must prevail.